# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THE GOAT LLC, DANIEL WEBSTER,
and GARY GRAVES,

                    Plaintiffs,                          Case No. 23-CV-1526-JPS

v.

ADVANCED WHOLESALE LLC and                              **ORDER**
NICHOLAS NEWGARD,

                    Defendants.

## 1.     PROCEDURAL BACKGROUND

On November 14, 2023, Plaintiffs The Goat LLC ("The Goat"), Daniel Webster ("Webster"), and Gary Graves ("Graves") (together, "Plaintiffs") sued Defendants Advanced Wholesale LLC ("Advanced Wholesale") and Nicholas Newgard ("Newgard") (together, "Defendants"), alleging six claims: (1) patent infringement; (2) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1051 et seq. (the "Lanham Act"); (3) false designation of origin and unfair competition in violation of the Lanham Act; (4) trade dress infringement in violation of the Lanham Act; (5) unfair competition in violation of Wis. Stat. § 100.20; and (6) deceptive trade practices in violation of Wis. Stat. § 100.18. ECF No. 1.

Plaintiffs represent that Newgard called them on December 8, 2023, after this action had been filed but before service of process, to "den[y] that any infringement occurred." ECF No. 9 at 2. Thereafter, Plaintiffs hired a private investigator and process server to locate and serve Defendants with the complaint and summonses on December 27, 2023. ECF No. 5 ("Made

contact with Nicholas Newgard at the front door and signa[l]ed to meet in the garage where he was served."); ECF No. 9 at 1.[1] The private investigator and process server located Defendants and served them after expending "substantial effort." ECF No. 8 at 2. Consequently, Defendants' response to the complaint was due by January 17, 2024. Fed. R. Civ. P. 12(a)(1)(A)(i). On February 6, 2024, having received no answer or other response to the complaint from Defendants, Plaintiffs requested entry of default. ECF No. 7. The Clerk of Court entered default on February 7, 2024.

Now before the Court is Plaintiffs' motion for default judgment, which was also filed on February 6, 2024, together with a supporting brief and declaration. ECF Nos. 7, 8, 9. Plaintiffs served the motion and accompanying papers on Defendants by mail at the same address where Defendants were personally served. ECF No. 7 at 2; *see also* ECF No. 5.

---

[1] Plaintiffs plead that Newgard is the "founder and principal officer" of Advanced Wholesale. ECF No. 1 at 2. The Court takes judicial notice of the Wisconsin Department of Financial Institutions public database, which confirms that Newgard is the registered agent of Advanced Wholesale. Wis. Dep't of Fin. Insts., *available at* https://perma.cc/84ZZ-8SW7 (last visited Apr. 12, 2024); *Ambrosetti v. Or. Cath. Press*, 458 F. Supp. 3d 1013, 1016 n.1 (N.D. Ind. 2020) ("[T]he Court may take judicial notice of public record information obtained from an official government website.") (citing *Betz v. Greenville Corr. Inst.*, No. 14-cv-104-MJR, 2014 WL 812403, at *1 (S.D. Ill. Mar. 3, 2014); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); and *Laborer's Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002)).

Advanced Wholesale may therefore be served by, as here, service of the summons and complaint on Newgard. *See Krispy Krunchy Foods LLC v. Silco LLC*, No. 20-CV-293-PP, 2023 WL 2465881, at *2 (E.D. Wis. Mar. 10, 2023) (citing Fed. R. Civ. P. 4(h)(1)(A) and (e)(1), and Wis. Stat. § 801.11(5)(a)); *see also* Wis. Stat. § 183.0119.

On February 21, 2024, the Clerk of Court docketed a letter from Newgard dated February 15, 2024. ECF No. 10. Therein, Newgard informed the Court that "[o]n February 13, 2024, [he] returned from vacation" to find Plaintiffs' mailing containing the motion for default judgment papers. *Id.* at 1. Newgard argued that despite Plaintiffs' statement in the motion that Defendants had been served with the complaint and summonses on December 27, 2023, neither "[he] nor any other representative for Advanced Wholesale ha[d] been served." *Id.* Newgard requested "an appropriate and reasonable amount of time to seek counsel and properly defend Advanced Wholesale LLC within this case." *Id.*

Over seven weeks have passed since the Court's receipt of this letter, and counsel has not appeared for Defendants. Defendants have themselves not appeared in any manner to defend against this case,[2] and the Court has received no further correspondence from Defendants.

Even construing Newgard's letter as a motion to set aside default, Newgard's submission, coupled with the over seven weeks that the Court has allowed to pass for Newgard to "seek counsel," demonstrate that default is wholly appropriate. ECF No. 10 at 1. "In order to have an entry of default set aside or a default judgment vacated, defendants [must] show: (1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989) (citing *Breuer Elec. Mfg. v. Toronado Sys. of Am.*, 686 F.2d 182, 185 (7th Cir. 1982)).

---

[2]Only Newgard could have appeared without counsel because "limited liability companies may not appear *pro se*." *Ghetto Dope Recordzs LLC v. Dep't of the Treasury*, No. 22-CV-0229-BHL, 2022 WL 4273173, at *1 (E.D. Wis. Sept. 15, 2022) (citing *1756 W. Lake St. LLC v. Am. Chartered Bank*, 787 F.3d 383, 385 (7th Cir. 2015)).

Newgard does not proffer any defense on his own behalf, let alone a meritorious one, and, again, over seven weeks have passed, and counsel has not appeared on behalf of Advanced Wholesale. While Newgard ostensibly took quick action—following receipt of the motion for default judgment papers—to mail his letter to the Court requesting time to seek counsel, his conduct before that and since then has been dilatory and exhibited a willful choice to avoid this litigation. *Cf. Koala Corp. v. Wizard Works Prod. Dev. Co.*, No. 03-C-0429-C, 2003 WL 23218094, at *1 (W.D. Wis. Dec. 5, 2003) ("[I]t does not appear that defendant . . . was willfully avoiding defending this suit; at most he was willfully delaying defending the suit and not for a particularly long period of time. He retained counsel just after the twenty days had lapsed and his attorney talked with plaintiff's attorney just thirteen days after the lapse and only six days after the default was entered.").

The seven-week lapse is bolstered both by Plaintiffs' representation that Newgard called them regarding the allegations set forth in this suit after it was filed, as well as the process server's signed return of service stating that Newgard was personally served with the summons and complaint on December 27, 2023 at the same address where he claims to have received the default judgment motion papers. ECF No. 9 at 2; ECF No. 5; *see also C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1204 (7th Cir. 1984) (affirming district court's denial of request to vacate default judgment where it concluded that defendants "believed that they could ignore this case and throw themselves upon the mercy of the court by contending that their local counsel was incompetent") (citation omitted); *Calumet Lumber, Inc. v. Mid–America Indus., Inc.*, 103 F.3d 612, 615–18 (7th Cir. 1997) (holding that entry of default judgment was proper where

counsel knowingly skipped a hearing and failed to answer a cross-claim altogether); *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45–46, 47 (7th Cir. 1994) (holding that entry of default was proper where party did not file its answer or attend a status hearing, and further affirming entry of default judgment).

Therefore, the Clerk's entry of default stands, and the Court treats the motion for default judgment as unopposed. *See* Civ. L.R. 7(b), (d); *cf.* Civ. L.R. 41(c). For the reasons set forth herein, the motion will be granted in part and denied in part. Plaintiffs have established Defendants' liability with respect to their claims for patent infringement, trademark infringement, false designation of origin, trade dress infringement, and violations of Wis. Stat. § 100.18. The Court dismisses with prejudice Plaintiffs' claim for violations of Wis. Stat. § 100.20 and dismisses without prejudice any standalone unfair competition claim under the Lanham Act. The Court further finds that Plaintiffs have demonstrated their entitlement to statutory damages, attorney's fees and costs, and equitable relief, including a permanent injunction. Judgment by default will be entered accordingly and this case will be dismissed.[3]

## 2.    LEGAL STANDARD

Upon entry of default, "the well-pleaded allegations of a complaint relating to liability are taken as true." *VLM Food Trading Int'l, Inc. v. Ill.*

---

[3]In their motion for default judgment, with respect to damages, Plaintiffs request either "that the Court order Defendants to provide an accounting of all sales and offers for sale of the infringing [products]" so that they can "assess the full scope of damages and . . . calculate an appropriate amount for compensation" or "[i]n the alternative," an award of statutory damages under the Lanham Act. ECF No. 8 at 6. Because the Court awards Plaintiffs' alternative request for statutory damages under the Lanham Act, *see infra* Section 4.3.2, the Court dismisses the case.

*Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). "Accepting those facts as true, a court must determine whether those facts establish that the plaintiff is entitled to the relief it seeks." *Cree, Inc. v. BHP Energy Mex. S. de R.L. de C.V.*, 335 F. Supp. 3d 1105, 1111 (E.D. Wis. 2018) (citing *VLM Food*, 811 F.3d at 255). If they do, the Court may, in its discretion, grant default judgment to the movant. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (citing *Dundee Cement*, 722 F.2d at 1322).

Even if default judgment is granted, the movant nevertheless bears the responsibility to prove its damages under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Indeed, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," and the Court must conduct an inquiry "to ascertain the amount of damages with reasonable certainty." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) (internal bracketing omitted)). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* (quoting *Dundee Cement*, 722 F.2d at 1323). Judgment by default may also include an award of equitable relief, including the entry of a permanent injunction, where the party seeking such relief demonstrates its entitlement thereto. *Id.* at 604.

## 3.     RELEVANT FACTS PLEADED IN THE COMPLAINT[4]

Webster and Graves have been involved in the roofing industry for several decades, during which time they have gained substantial knowledge, familiarity, and skill in the construction and repair of roofs on buildings and other structures. To assist roofers in this work, Webster and Graves developed and designed a novel and proprietary Roof Climbing Tool. The Roof Climbing Tool can be engaged to (as described in the patent, *see infra* text of claim 1) the peak of a roof and includes an elongated body with spaced apart step handles that allow the roofer to climb up and down the inclined surface of the roof. Webster and Graves organized and founded The Goat to produce, market, and sell their novel Roof Climbing Tool. The Goat has been conducting business related to the Roof Climbing Tool since approximately 2014.

On January 24, 2017, the United States Patent and Trademark Office (the "PTO") issued U.S. Patent No. 9,551,184 (the "'184 Patent"), entitled "Roof Climbing Tool" to Webster and Graves as inventors. Webster and Graves own all right, title, and interest in the '184 Patent including the right to sue for past and future damages and to seek injunctive relief. Claim 1 of the '184 Patent describes the invention claimed as:

> A tool for engaging a roof, the roof including a first surface and a second surface intersecting at a peak, the tool comprising: a peak engagement member for engaging the

---

[4]The factual allegations in this Section are largely reproduced, with minor edits, from Plaintiffs' complaint. ECF No. 1. The Court has not located any case law "standing for the proposition that [Defendants] are not deemed to have admitted allegations made upon information and belief in the default context." *Nat'l Collegiate Athletic Ass'n v. Kizzang LLC*, 304 F. Supp. 3d 800, 807 n.5 (S.D. Ind. 2018). The Court thus omits any such qualifiers. Citations to documents other than the complaint are included.

Case 2:23-cv-01526-JPS   Filed 04/12/24   Page 7 of 39   Document 11

first surface of the roof; and an operator climbing member including an elongated central shaft, and a plurality of spaced apart step handles mounted on the central shaft, each step handle having an elongated body with a bore extending therethrough, a generally flat roof engaging surface spaced away from the shaft and a generally U-shaped handle extending opposite the roof engaging surface, the U-shaped handle having an elongated bight that is generally parallel to the central shaft, the bore of each step handle is disposed between the U-shaped handle and the roof engaging surface of each the step handle, the shaft extending through the bore of each step handle, the operator climbing member being configured for engaging the second surface of the roof and being operatively connected to the peak engagement member.

ECF No. 1-1 at 14. These features are illustrated as shown below:



To facilitate the promotion, marketing, and sale of the Roof Climbing Tool, Webster and Graves filed for trademark registrations for goods and services related to their invention. On June 13, 2023, the PTO issued U.S. Registration No. 7,078,257 (the "'257 Registration") for the word mark THE GOAT® on the principal register. Webster and Graves are the named

registrants and own all right, title and interest in THE GOAT® word mark. THE GOAT® word mark is registered without claim to any particular style, size, or color. On September 5, 2023, the PTO issued U.S. Registration No. 7,153,441 (the "'441 registration") for the design mark THE GOAT® on the principal register. Webster and Graves are the named registrants and own all right, title and interest in THE GOAT® design mark:



Plaintiffs have continuously and consistently marked the packaging used to ship and deliver the Roof Climbing Tool to customers with the '184 Patent. Plaintiffs have further continuously referred to, marketed, and advertised the Roof Climbing Tool with THE GOAT® word and design marks, including use of the marks as a source identifier designating the origin of the Roof Climbing Tool. Plaintiffs have continuously marketed and promoted the Roof Climbing Tool by reference to THE GOAT® word and design marks, including through their own internet sales site and on third party e-commerce sites like Amazon.

THE GOAT® word and design marks have been affixed prominently to the packaging in which the Roof Climbing Tool is shipped and delivered to customers. The Roof Climbing Tool also includes "unique, distinctive, and non-functional features and designs, including . . . the color selection of the elongated shaft (blue) and the plurality of step handles (yellow) of the operator climbing member." Plaintiffs have not granted and are unaware of any encumbrances, rights, licenses, liens, acquiescence, or

any claims by any third party to their intellectual property including the '184 Patent and THE GOAT® word and design marks.

Plaintiffs learned during approximately the second half of 2020 that Newgard, individually and through Advanced Wholesale, was selling the Roof Climbing Tool to non-party customers. Plaintiffs communicated with Newgard and discussed the unauthorized sales. Thereafter, for a limited period, Plaintiffs allowed Newgard, individually and/or through Advanced Wholesale, to continue to offer for sale and sell the Roof Climbing Tool to non-party customers. Defendants made sale agreements with the non-party customers. Defendants then placed orders with Plaintiffs to obtain the Roof Climbing Tools, which Plaintiffs drop-shipped directly to the non-party customers.

In or around November 2022, Plaintiffs learned that Defendants had replicated the Roof Climbing Tool without permission and were making unauthorized sales of the device to non-party customers. Plaintiffs orally informed Newgard that they would no longer sell the Roof Climbing Tool to Defendants for resale or otherwise, terminated all past and present commercial association with Newgard and Advanced Wholesale, and unequivocally demanded that Defendants cease and desist any commercial activities involving the Roof Climbing Tool.

Defendants, however, continued to sell and offer for sale the Roof Climbing Tool on various e-commerce sites, including Amazon and Etsy, as well as on Defendants' own website. Defendants copied the proprietary and protected design of the Roof Climbing Tool and are continuing to make, or have made for them, virtually identical versions that they are unlawfully selling and offering for sale in the United States including through e-commerce sites. Defendants have shipped and continue to ship

these versions of the Roof Climbing Tool from a P.O. Box in Baldwin, Wisconsin.

The versions of the Roof Climbing Tool sold by Defendants have the same structure, features, and design—including "the peak engagement section and the plurality of step handles"—as covered by the claims of the '184 Patent. Specifically, Defendants' versions of the Roof Climbing Tool "have infringed and are continuing to infringe at least claim 1 of the '184 Patent" as they "include a peak engagement member for engaging the peak of a roof" and "an operator climbing member having an elongated central shaft and a plurality of spaced apart step handles." Further, "[t]he step handles include a generally flat roof engaging surface and a U-shaped handle opposite the roof engaging surface and a bore disposed between the U-shaped handle and the roof engaging surface. The shaft extends through the bore of each step handle." Finally, "[w]hen assembled, the operator climbing member including the step handles is operatively coupled to the peak engaging member." Defendants are not and have never been licensed to sell in, offer for sale in, and/or import into the United States their versions of the Roof Climbing Tool. Defendants' version of the Roof Climbing Tool is shown below:



Defendants are also selling, offering for sale, promoting, marketing, and advertising their versions of the Roof Climbing Tool to consumers and the public at large using THE GOAT® word and design marks. Additionally, Defendants are shipping their versions of the Roof Climbing Tool in packaging that prominently displays THE GOAT® word and/or design marks:



The packaging in which Defendants' versions of the Roof Climbing Tool are shipped to the non-party customers is also marked with the '184 Patent. The products sold by Defendants also include the unique, distinctive, and non-functional features and designs, such as the color selections, as Plaintiffs' Roof Climbing Tool.

In or around November 2022, Plaintiffs submitted a notice of infringement to Amazon regarding Defendants' unauthorized sales activities on the Amazon e-commerce sites using Amazon's designated infringement notice procedures. Amazon responded by removing Defendants' listing of their version of the Roof Climbing Tool from the Amazon e-commerce sites. Defendants then relisted their product for sale on the Amazon e-commerce sites. In September and October 2023, Plaintiffs, through their counsel, sent letters to Newgard reiterating that Defendants' sales and offers for sale of their versions of the Roof Climbing

Tool were unauthorized and unlawful, and again demanded that Defendants cease and desist their activities. Neither Newgard nor Advanced Wholesale responded to Plaintiffs' letters.

Thus, Defendants have known of the '184 Patent and their infringement since at least November 2022. Plaintiffs allege that, despite such knowledge, "Defendants have continued their infringing activities in deliberate and intentional disregard to Plaintiffs' rights under the '184 Patent such that Defendants' infringement is willful . . . ." Plaintiffs further allege that "Defendants' unauthorized use of THE GOAT® word and/or design marks as alleged herein is done willfully, deliberately, and intentionally with the purpose of capitalizing on the goodwill and reputation associated with the Plaintiffs' registered marks and is done with notice of Plaintiffs' registered marks . . . ."

4.    **ANALYSIS**

4.1    **Jurisdiction**

"Before the court can consider entering judgment, . . . it must be satisfied that subject matter jurisdiction exists over this lawsuit." *Abele v. Abele*, No. 21-CV-370-WMC, 2021 WL 3190391, at *1 (W.D. Wis. July 28, 2021) (citing *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit.")). Subject-matter jurisdiction exists in this case. Plaintiffs sue under the federal patent and trademark laws and therefore invoke federal question jurisdiction. Indeed, the Court has exclusive jurisdiction over these claims. 28 U.S.C. § 1338(a). The Court has supplemental jurisdiction over the related Wisconsin law claims. 28 U.S.C. § 1367(a).

The Court is also satisfied that it has personal jurisdiction over Defendants. *See e360 Insight,* 500 F.3d at 598 ("Default judgments rendered

without personal jurisdiction are void . . . .") (collecting cases). Defendants were served in Wisconsin. Advanced Wholesale is registered in Wisconsin, *see supra* note 1, and purposefully and consistently conducts business in Wisconsin, including the conduct alleged in this suit. Newgard resides in Wisconsin and also purposefully and consistently conducts business in Wisconsin, including the conduct alleged in this suit. Accordingly, the Court may exercise personal jurisdiction over Defendants. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) ("In a case involving federal question jurisdiction, 'a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant.'") (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)); Wis. Stat. § 801.05(1) (Wisconsin courts have jurisdiction over persons present in Wisconsin when served, persons domiciled within Wisconsin, domestic limited liability companies, or persons or companies who engage in substantial activities within Wisconsin).

### 4.2    Plaintiffs' Entitlement to Relief

As noted, the Court takes the above factual allegations set forth in the complaint relating to liability as true. *VLM Food*, 811 F.3d at 255. However, the Court still must determine whether those facts establish that Plaintiffs are entitled to relief. *Cree*, 335 F. Supp. 3d at 1111. For the reasons explained below, Plaintiffs have established Defendants' liability with respect to their claims for patent infringement, trademark infringement, false designation of origin, trade dress infringement, and violations of Wis. Stat. § 100.18, but not with respect to their claim for violations of Wis. Stat. § 100.20 and any standalone unfair competition claim under the Lanham

Act. The Court dismisses with prejudice Plaintiffs' claim for violations of Wis. Stat. § 100.20 and dismisses without prejudice any standalone unfair competition claim under the Lanham Act.

### 4.2.1 Patent Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "There are 'five elements of a patent infringement pleading[:] (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked.'" *Display Techs., LLC v. Leantegra, Inc.*, No. 20-CV-7816 (LJL), 2022 WL 354667, at *3 (S.D.N.Y. Feb. 7, 2022) (quoting *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013)).

Based on the well-pleaded allegations in the complaint, Plaintiffs have established all five elements. Plaintiffs allege that they own the '184 Patent and that it is valid. *See also* 35 U.S.C. § 282(a) ("A patent shall be presumed valid."). Plaintiffs name Newgard and Advanced Wholesale as Defendants. Plaintiffs assert that Defendants have infringed and continue to infringe at least claim 1 of the '184 Patent by manufacturing, designing, offering for sale, and/or selling versions of the Roof Climbing Tool that replicate the structure, features, and design of the same as covered by the '184 Patent. Plaintiffs allege a violation of 35 U.S.C. § 271. ECF No. 1 at 10. Specifically, Plaintiffs assert that Defendants' products include, as also recited in claim 1 of the '184 Patent: a peak engagement member; a plurality of spaced-apart step handles that have a generally flat roof engaging surface and a U-shaped handle opposite that surface with a bore disposed between

the two, through which the shaft extends; and a mechanism by which the operator climbing member with the step handles is coupled to the peak engaging member.

To the extent that Plaintiffs' written descriptions (as pleaded in the complaint) of Defendants' products do not include certain elements recited in claim 1 of the '184 Patent—such as the mounting of the step handles on the shaft, the elongated body of the step handles, and the U-shaped handle having an elongated bight parallel to the central shaft—those elements are clear from the photograph of Defendants' product in the complaint. *See Karmagreen, LLC v. Super Chill CBD Prods.*, No. 23-CV-6073, 2024 WL 1348783, at *5 (S.D.N.Y. Mar. 29, 2024) ("The images of Defendants' labels included in the Complaint support these allegations."); *see also Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 985 (D. Wyo. 2022) (comparing photographs and holding that "the Complaint sufficiently establishes through '. . . the eye of an ordinary observer' [that] the two designs are substantially the same" for purposes of infringement by the doctrine of equivalents in lieu of literal infringement) (quoting *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015)); *Enpat, Inc. v. Budnic*, 773 F. Supp. 2d 1311, 1314 (M.D. Fla. 2011) (factual allegations taken as true sufficient to establish liability for patent infringement under § 271, particularly combined with photograph of infringing product). Thus, Plaintiffs have established Defendants' liability for patent infringement under § 271.

### 4.2.2 Trademark Infringement, False Designation of Origin, Unfair Competition, and Trade Dress Infringement

In their complaint, Plaintiffs plead their trademark claims in four components: Count II alleges trademark infringement in violation of the Lanham Act, specifically 15 U.S.C. § 1114(a); Count III alleges false designation of origin *and* unfair competition in violation of the Lanham Act, specifically § 1125(a); and Count IV alleges trade dress infringement in violation of the Lanham Act, specifically § 1125(a). ECF No. 1 at 11–15.

This Court recently had occasion to consider whether the Seventh Circuit recognizes a "standalone unfair competition claim under the Lanham Act." *ExeGi Pharma, LLC v. Brookfield Pharms., LLC*, No. 20-CV-192-JPS, 2023 WL 4352452, at *9 (E.D. Wis. July 5, 2023) (citation omitted). The Court concluded that the Seventh Circuit has not yet recognized such a claim and "declin[ed] to recognize a novel claim in this Circuit." *Id.* Indeed, district courts that have recognized such a claim note that "because claims of trademark infringement and unfair competition under the Lanham Act based on the same conduct are evaluated under the same standard," "[t]he analysis of the trademark infringement claim under the Lanham Act . . . therefore control[s] resolution of" the unfair competition claim. *Slep-Tone Ent. Corp. v. Sellis Enters., Inc.*, 87 F. Supp. 3d 897, 903 (N.D. Ill. 2015) (citing *Trans Union LLC v. Credit Rsch., Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001)). The Seventh Circuit has not weighed in during the time since the Court issued its opinion on the matter. Thus, the Court will dismiss without prejudice any standalone unfair competition claim under the Lanham Act, and it will cabin its analysis to only the trademark infringement, false designation of origin, and trade dress infringement claims.

Section 1114(a) of the Lanham Act "specifies a cause of action for the unauthorized use of a registered trademark" and

> renders a person liable . . . when he "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

*Phoenix Ent. Partners, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (quoting 15 U.S.C. § 1114(a)). Meanwhile, § 1125(a) "creates a remedy against a person who engages in unfair competition by, inter alia, falsely designating the origin of a product." *Id.* Section 1125 provides that

> [a]ny person who, on or in connection with any goods . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . , which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . . shall be liable in a civil action . . . .

15 U.S.C. § 1125(a)(1).

"To prevail on either type of claim, a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of the mark is likely to cause confusion among consumers." *Phoenix,* 829 F.3d at 822 (citing *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2001)); *see also Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019) ("[C]laims for trademark infringement and unfair competition both require (1) that [plaintiff's] mark be validly registered and (2) that [defendant's] use be likely to cause confusion among consumers.") (citing *H-D Mich., Inc. v.*

*Top Quality Serv., Inc.*, 496 F.3d 755, 759 (7th Cir. 2007) and *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001)).

With respect to the first element, "[r]egistration under the [Lanham] Act affords the registrant a rebuttable presumption of validity." *CAE, Inc.*, 267 F.3d at 673 (quoting 15 U.S.C. § 1115(a) ("[A] mark registered on the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . .")). Plaintiffs plead that, on June 13, 2023, the PTO issued the '257 Registration for the word mark THE GOAT® on the principal register. They further plead that, on September 5, 2023, the PTO issued the '441 Registration for the design mark THE GOAT® on the principal register. Thus, they have established that the marks are protectable.

Next, "[t]o decide if there is a likelihood of confusion, [courts] ask whether consumers who might use either product would likely attribute them to a single source." *Uncommon, LLC*, 926 F.3d at 425 (citing *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011)). Courts use

> seven factors in making this decision: (1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to "palm off" its product as that of another.

*Id*. (citing *Sorensen v. WD-40 Co.*, 792 F.3d 712, 716 (7th Cir. 2015)). "No one factor is dispositive." *Id.* (citing *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 704 (7th Cir. 2014)). "Usually, however, 'the similarity of the marks, the defendant's intent, and actual confusion' are most important." *Id.* (quoting *Packman*, 267 F.3d at 643).

Taking Plaintiff's well-pleaded factual allegations as true, Plaintiffs have demonstrated nearly all these factors and have thus, on balance, established a likelihood of consumer confusion. Plaintiffs plead that Defendants' intent was to capitalize on Plaintiffs' brand and trade on their goodwill. And by virtue of their default, "[Defendants] ha[ve] admitted [Plaintiffs'] allegation that [they] acted knowingly and intentionally or with reckless disregard or willful blindness to [Plaintiffs'] rights." *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2010), R. & R. adopted by 775 F. Supp. 2d 613 (S.D.N.Y. 2011) (quoting *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009)). Further, THE GOAT® word mark is registered without claim to any particular style, size, or color. Defendants ship their versions of the Roof Climbing Tool in packaging that displays THE GOAT® word mark. From the photograph in the complaint and reproduced above, it is apparent that Defendants also affix an identical or substantially indistinguishable THE GOAT® design mark to their packaging. The products are similar; indeed, they are materially indistinguishable imitations that Plaintiffs assert Defendants intended to pass off as genuine Roof Climbing Tools. Thus, Plaintiffs have established Defendants' liability for both trademark infringement and designation of false origin.

Turning to Plaintiffs' trade dress infringement claim, "'[t]rade dress' refers to the total image of a product, including features such as 'size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989) (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)). "An infringement of the trade dress is proven if: (1) the plaintiff's trade dress is inherently distinctive or has acquired secondary

Case 2:23-cv-01526-JPS   Filed 04/12/24   Page 20 of 39   Document 11

meaning, (2) the plaintiff's trade dress is primarily non-functional, and (3) the defendant's trade dress is confusingly similar, engendering a likelihood of confusion in the marketplace." *Id.* (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986)).

"A plaintiff's trade dress is inherently distinctive, and therefore protectable without proof of secondary meaning, . . . if it is 'sufficiently distinctive to allow consumers to identify the product from the trade dress.'" *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1069 (7th Cir. 1992) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 775–76 (1992) and quoting *AmBrit, Inc.*, 812 F.2d at 1535). "In order to be inherently distinctive, the trade dress must be either arbitrary or suggestive, rather than generic or descriptive." *Id.* (citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1120 & n.8 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992)). Plaintiffs' Roof Climbing Tool has a blue elongated shaft and yellow step handles. These colors, which match those of the unique goat image in THE GOAT® design mark, are inherently distinctive. In their complaint, Plaintiffs include an image of Defendants' product, reproduced above, which shows that Defendants' product also utilizes a blue elongated shaft and yellow step handles. "[T]he overall combination of these elements," which Plaintiffs' complaint establishes that "[Defendants] copied wholesale," is therefore inherently distinctive. *Id.* Plaintiffs' trade dress, which consists of color combinations and graphics, is also primarily non-functional.

Finally, Defendants' trade dress is confusingly similar to the Roof Climbing Tools' trade dress. Similar to the factors for consumer confusion in the trademark and false designation of origin context, "[i]n assessing the likelihood of marketplace confusion,"

the factors to be considered include the similarity of the trade dresses, the products to which the trade dresses are attached, the area and manner of concurrent use, the degree of care likely to be exercised by consumers, the strength of the plaintiff's trade dress, and the actual confusion and intent on the part of the alleged infringer to pass off the infringer's goods as those of the plaintiff.

*Roulo*, 886 F.2d at 937 (citing *Int'l Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1087 (7th Cir. 1988)).

As explained above, Plaintiffs' complaint together with Defendants' default establish that "[Defendants] . . . intentionally copied" the Roof Climbing Tool. *Comput. Care*, 982 F.2d at 1070. Comparing the parties' trade dresses "side-by-side" through the written descriptions and images set forth in the complaint reveals that the products are virtually indistinguishable. *Id.* Indeed, "the similarity in this instance is striking." *Roulo*, 886 F.2d at 937. "To further add to the confusion in the marketplace," Defendants sold their products through largely "the same retailers" through which Plaintiffs sold the Roof Climbing Tool. *Id.* The Court is thus satisfied that Plaintiffs' have established a likelihood of consumer confusion, and therefore Defendants' liability for trade dress infringement.

### 4.2.3   Wis. Stat. §§ 100.20, 100.18

Initially, the Court must dismiss Plaintiffs' claim for violations of Wis. Stat. § 100.20. "Private rights of action under Section 100.20 are extremely limited." *Faxon Sales, Inc. v. U-Line Corp.*, No. 17-CV-872-JPS, 2017 WL 4990617, at *7 n.8 (E.D. Wis. Oct. 31, 2017). "[A] claim may be made by a private person under this Act only upon the defendant's violation of an order issued by the Wisconsin Department of Agriculture, Trade and Consumer Protection." *Id.* at *5 n.6 (citing *Wyatt v. Philip Morris USA, Inc.*,

No. 09-C-0597, 2013 WL 4046334, at *5 (E.D. Wis. Aug. 8, 2013)); *see also White v. Schwans Consumer Brands Inc.*, No. 23-CV-0147-BHL, 2024 WL 1115711, at *3 (E.D. Wis. Mar. 14, 2024) ("[T]he statute provides for a limited private right of action . . . . Section 100.20 provides for a private right of action only for violations of 'orders' issued by ATCP pursuant to its authority under the statute.") (citing *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959, 971 (E.D. Wis. 1998)). No such order has been cited in the complaint (or, parenthetically, in Plaintiffs' motion for default judgment); thus, the Court must dismiss the § 100.20 claim for failure to state a claim. As this case is now at the default judgment juncture, and Plaintiffs' desired relief does not rely on this claim, the dismissal will operate with prejudice.

However, Plaintiffs' well-pleaded allegations establish Defendants' liability for deceptive trade practices under § 100.18. "To state such a claim, a plaintiff must show that the defendant used untrue statements to sell its wares to the public." *Standard Process Inc. v. AVC Infinite, LLC*, No. 18-CV-849-WMC, 2020 WL 103841, at *5 (W.D. Wis. Jan. 9, 2020) (citing *United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 836 N.W.2d 807, ¶ 15 (Wis. 2013) and *State v. Am. TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 713 (Wis. 1988)). In other words, "[c]laims arising under [§ 100.18] have three required elements: '(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff.'" *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quoting *Novell v. Migliaccio*, 749 N.W.2d 544, ¶ 49 (Wis. 2008)).

Plaintiffs plead that Defendants have used and continue to use the infringing marks and trade dress to advertise and promote their products

with the purpose of capitalizing on Plaintiffs' goodwill and reputation. Plaintiffs plead that Defendants did so to earn a profit from unsuspecting consumers, and that Plaintiffs have lost sales and been damaged as a result. Thus, Plaintiffs have established Defendants' liability under § 100.18.

### 4.3 Plaintiffs' Relief

Having determined that Plaintiffs have established their entitlement to relief on their claims for patent infringement, trademark infringement under the Lanham Act, false designation of origin under the Lanham Act, trade dress infringement under the Lanham Act, and violations of Wis. Stat. § 100.18 (*i.e.*, Defendants' liability), the Court turns to whether Plaintiffs have adequately proven their damages and demonstrated their entitlement to appropriate remedies. For the reasons explained below, the Court determines that Plaintiffs have demonstrated their entitlement to equitable relief, including a permanent injunction, as well as their entitlement to statutory damages.

The Court further determines that the amount of such statutory damages is determinable with certainty such that the need for a hearing is obviated. *e360 Insight*, 500 F.3d at 602; *see also Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, Nos. 03 C 4844 and 03 C 5311, 2008 WL 1775512, at *3 (N.D. Ill. Apr. 17, 2008) (holding that "requiring an evidentiary hearing for statutory damages here would defeat the purpose of 15 U.S.C. § 1117(c)(2), which recognized that damages in trademark cases may be difficult to prove due to defendant conduct" and collecting cases in which "courts have awarded statutory damages after default judgment without conducting evidentiary hearings") (citing S. Rep. No. 104-177, at *10).

### 4.3.1   Equitable Relief

Plaintiffs move for permanent injunctive relief. While they analyze the factors typically applied on such motions, ECF No. 8 at 4 (citing *Spectrum Brands, Inc. v. I&J Apparel, LLC*, No. 16-cv-741-jdp, 2017 WL 2303577, at *2 (W.D. Wis. May 26, 2017)), they do not cite the specific statutory provision under which they move. Their proposed order, however, sheds more light. Therein, Plaintiffs clarify that their desired permanent injunction pertains primarily to their patent infringement and Lanham Act claims (trademark infringement, false designation of origin, and trade dress infringement). ECF No. 7-2. Thus, the Court turns to those bodies of law for authority.

"Under the Patent Act, courts may issue injunctions upon a finding of infringement." *Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 760 (N.D. Ill. 2010) (citing 35 U.S.C. § 283). The Lanham Act also authorizes injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark violations. 15 U.S.C. § 1116(a). Under both bodies of law, a plaintiff must establish four factors to obtain a permanent injunction; specifically,

> a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–13 (1982) and *Amoco Prod. Co. v. Gambell*,

Case 2:23-cv-01526-JPS   Filed 04/12/24   Page 25 of 39   Document 11

480 U.S. 531, 542 (1987)); *see also H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1049 (E.D. Wis. 2018) (citing *eBay*, 547 U.S. at 391 and *H-D USA LLC v. Mayo*, No. 14-CV-654-JPS, 2016 WL 7839144, at *2 (E.D. Wis. June 2, 2016)).

"[B]ecause of the difficulty in quantifying damage to the reputation or goodwill of a mark holder, courts presume irreparable harm and the inadequacy of legal remedies in Lanham Act cases." *H-D U.S.A.*, 311 F. Supp. 3d at 1050 (citing *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) and *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997)). However, in patent infringement cases, no such presumption applies. *Peng v. P'ships & Unincorporated Assocs. Identified on Schedule A*, No. 21-CV-1344, 2021 WL 4169564, at *2 (N.D. Ill. Sept. 14, 2021) (citing *eBay*, 547 U.S. 388 and *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011)).

With respect to the patent infringement claim, the Court finds both irreparable harm and inadequacy of legal remedies. Under Federal Circuit precedent, "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)). Plaintiffs have established each of these factors here, particularly given that their many efforts to contact Defendants directly (as well as indirectly through Amazon) to request that Defendants cease their unlawful activity have fallen on deaf ears. The fact that Defendants have defaulted in this action and, prior to default, required the services of a private investigator to locate and serve them also weighs in favor of irreparable harm, as well as the inadequacy of legal remedies. *Cf. Robert*

*Bosch LLC*, 659 F.3d at 1155–56 ("While competitive harms theoretically can be offset by monetary payments in certain circumstances, the likely availability of those monetary payments helps define the circumstances in which this is so."). Public records indicate that Advanced Wholesale is in delinquent status, which further demonstrates the inadequacy of legal remedies. *Id.*; *see supra* sources cited in note 1.

This leaves the Court to consider only the third and fourth elements for permanent injunctive relief with respect to both the patent infringement and Lanham Act claims, both of which are also met. If Defendants' infringement continues, Plaintiffs will continue to lose profits to which they are entitled, and Plaintiffs' goodwill may be further negatively impacted. And "[w]hile a permanent injunction may harm [Defendants'] profits if [they are] forced to discontinue" offering for sale their versions of the Roof Climbing Tools, Defendants "never had a legal right to profit from" that infringement in the first place. *Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 950 (C.D. Ill. 2014); *see also Robert Bosch LLC*, 659 F.3d at 1156 ("A party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one.") (citing *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)).

There is also no reason to believe that the public interest would be disserved by imposition of a permanent injunction in this case. To the contrary, "[t]he Seventh Circuit . . . has found that the public interest is served by an injunction enjoining the use of infringing trademarks because 'enforcement of the trademark laws prevents consumer confusion.'" *NCAA v. Kizzang LLC*, 304 F. Supp. 3d 800, 812 (S.D. Ind. 2018) (quoting *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) and citing *Am. Auto. Assoc., Inc. v. Waller*, No. 1:16-cv-2890-WTL-MPB, 2017 WL 6387315,

at *6 (S.D. Ind. 2017)). With respect to patent infringement, the public has a "long-term interest in the protection of intellectual property rights." *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 323 F. Supp. 3d 1071, 1079 (W.D. Wis. 2018). While Defendants may offer the Roof Climbing Tool at a more affordable price, and "public interest in access to th[e] technology is an important consideration," the long-term interest in intellectual property rights, together with the other three factors supporting permanent injunctive relief, carry the day. *Id.*[5]

The Court will accordingly grant Plaintiff the permanent injunction it requests, with minor edits for clarity, which will be issued separately and entered contemporaneously with this Order.

### 4.3.2    Statutory Damages

With respect to damages, Plaintiffs request either that the Court order Defendants to provide an accounting of sales of their versions of the Roof Climbing Tools so that Plaintiffs may calculate their damages, or alternatively, for statutory damages under the Lanham Act. *See supra* note 3. Given Defendants' default and associated conduct—*i.e.*, the necessity of a private investigator to locate Defendants, Defendants' call to Plaintiffs

---

[5]To the extent that Plaintiffs' proposed permanent injunction contains terms that pertain to the Wis. Stat. § 100.18 claim, courts consider the same factors to determine whether permanent injunctive relief is appropriate as to § 100.18 claims. *See, e.g.*, *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 775 F. Supp. 2d 1082, 1086 (E.D. Wis. 2011). For the same reasons those factors are satisfied as to the patent infringement and Lanham Act claims, they are satisfied as to the § 100.18 claim. Further, to the extent that the proposed permanent injunction contains terms that pertain to a standalone claim for unfair competition under the Lanham Act, the Court retains those terms because they are duplicative of terms pertaining to the viable Lanham Act claims.

following the filing of this suit, and Defendants' request for time to locate counsel and subsequent ignorance of this litigation for over seven weeks—the Court is not confident that ordering an accounting will be either expedient or productive. Thus, the Court will analyze Plaintiffs' entitlement to statutory damages under the Lanham Act.

Plaintiff pursues statutory damages under 15 U.S.C. § 1117(c). That provision provides that in cases

> involving the use of a counterfeit mark . . . the plaintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods . . . in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods . . . as the court considers just; or . . . if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods . . . .

In other words, this provision applies "[w]hen a plaintiff succeeds in proving counterfeiting, as opposed to mere infringement, of his trademarks." *H-D U.S.A.*, 311 F. Supp. 3d at 1045. The Court has already determined that Plaintiff has established Defendants' liability for trademark infringement. To award statutory damages, however, the Court must find the separate and additional elements of counterfeiting.

Plaintiffs do not plead a standalone claim for counterfeiting in the complaint. However, they plead their trademark infringement claim under § 1114(a), which incorporates in an action for infringement "use in commerce [of] any reproduction, *counterfeit*, copy, or colorable imitation of a registered mark."(emphasis added). Accordingly, "the use of a counterfeit mark in the context of the Lanham Act is not, in and of itself, a cause of action." *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F.

Supp. 2d 850, 866 (C.D. Ill. 2013); *see also Rosta AG v. Lovejoy, Inc.*, No. 1:16-CV-199, 2017 WL 3473841, at *2 (W.D. Mich. Aug. 14, 2017) (holding that the elements needed to plead and prove counterfeiting to recover statutory damages under § 1117(c) do not need to be set forth "in a distinct claim") (citing *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 425 (6th Cir. 2010)). "Rather, in a civil action arising under § 1114, a finding that a counterfeit mark was used permits certain additional remedies, including . . . the awarding of statutory damages, § 1117(c) . . . ." *All Star Championship Racing, Inc.*, 940 F. Supp. 2d at 866.

Here, Plaintiffs have adequately pleaded the counterfeiting elements to recover the additional remedy of statutory damages under § 1117(c).

> [T]he elements of a counterfeit mark enhancement are: (1) a spurious mark which is identical with, or substantially indistinguishable from, a registered mark, 15 U.S.C. § 1127; (2) that is registered with the [PTO]'s principal register for use on the same goods or services for which the defendant uses the mark; and (3) the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced.

*Id.* The Court concluded as part of its trademark infringement analysis, *see supra* Section 4.2.2, that all three elements are present. Thus, Plaintiffs have established their entitlement to statutory damages, leaving the Court only to determine the appropriate amount of statutory damages.

Under § 1117(c), the Court may award between $1,000 and $200,000 "per counterfeit mark per type of goods." "The damages limit increases to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed if the court finds that the defendant acted willfully." *RooR Int'l BV v. Muncie Petrol. Inc.*, No. 118CV03959SEBDML, 2020 WL 2748196, at *3 (S.D. Ind. May 27, 2020) (citing § 1117(c)(2)). Plaintiffs request

an award of "$200,000.00 total, estimated based upon $100,000.00 per infringement of the '257 Registration and '441 Registration." ECF No. 8 at 6. Based on the amount requested, Plaintiffs are not required to establish willfulness for purposes of the statutory increase. However, willfulness is nonetheless an element of the standard that courts apply to determine the appropriate amount of damages to award within the statutory range.

Specifically, "[t]aking copyright infringement principles as a guide, courts apply the following factors to determine statutory damages for trademark infringement:"

> (1) the defendant's expenses saved and profits reaped; (2) the plaintiff's lost revenue; (3) the value of the trademark; (4) general deterrence; (5) the willfulness of the defendant's conduct; (6) the defendant's cooperation in providing records from which to determine the value of the infringing products; and (7) specific deterrence of the defendant.

*Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 947 (C.D. Ill. 2014) (citing *Coach, Inc. v. Pure MLK Last Stop, Inc.*, No. 12-CV-2254, 2013 WL 5888139, at *2 (C.D. Ill. Nov. 4, 2013)). The Lanham Act "confers a great deal of discretion on a district court in fashioning a remedy for trademark infringement." *4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 912 (7th Cir. 2019) (quoting *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed. Cir. 1984)); *see also* § 1117(c) (authorizing district court to impose statutory damages "as the court considers just").

Plaintiffs plead that Defendants' infringing (and as the Court has found, counterfeiting) use of THE GOAT® word and design marks "is done willfully, deliberately, and intentionally with the purpose of capitalizing on the goodwill and reputation associated with the Plaintiffs' registered marks and is done with notice of Plaintiffs' registered marks." ECF No. 1 at 12. As

with their intent for purposes of the confusion element for Plaintiffs' trademark and trade dress infringement claims, "by virtue of their default[,] [Defendants] are deemed to be willful infringers." *All-Star Mktg. Grp., LLC*, 775 F. Supp. 2d at 621 (collecting cases); *see also RooR Int'l BV*, 2020 WL 2748196, at *3 ("By failing to defend or otherwise participate in this action, [Defendant] has left Plaintiffs' allegation of willfulness unchallenged.").

These implications of Defendants' default notwithstanding, Plaintiffs' allegations are more than sufficient to establish willfulness such that an award of $100,000 per counterfeit mark is appropriate. "[I]nfringement is willful when the infringer knows that it is infringing or acts 'in reckless disregard' of that possibility." *H-D U.S.A.*, 311 F. Supp. 3d at 1045 (quoting *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994)). "To find knowing infringement, 'willful blindness is knowledge enough.'" *Id.* (quoting *Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584, 590 (7th Cir. 1989) and citing *Hard Rock Cafe Licensing Corp. v. Concession Servs.*, 955 F.2d 1143, 1149 (7th Cir. 1992)).

Plaintiffs plead that they put Defendants on notice indirectly through their infringement report to Amazon in November 2022 and that they have since directly contacted Defendants in September and October 2023 requesting that they cease their unauthorized conduct. In other words, Plaintiffs contacted Defendants regarding their infringing activities after the '184 Patent was issued, as well as before *and* after the '257 Registration and the '441 Registration were issued. *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) ("[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence

of willfulness . . . .") (quoting *Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991)).

The remaining factors used to assess the amount of statutory damages also weigh in favor of an award of $100,000 per counterfeit mark. With respect to the value of the marks, Plaintiffs plead that they have expended substantial time, money, and effort in developing their brand recognition and goodwill. ECF No. 1 at 5. As a result of these efforts, THE GOAT® word and design marks have become highly recognizable in the roofing market throughout the United States. *Id*. at 6. This heightens the value of the marks and supports a higher statutory damages award. At the same time, however, the marks have only been in existence and used continuously since 2023—not particularly long. The value of the marks is undercut by their relatively short lifetime. *C.f. H-D U.S.A.*, 311 F. Supp. 3d at 1048 (fact that plaintiff "ha[d] developed and strengthened [its marks] over decades of exposure" weighed in favor of higher damages award).

Nonetheless, a need to specifically deter Defendants from further counterfeiting activity is at play here. Plaintiffs put Defendants on notice of their infringement in November 2022 by submitting an infringement report through Amazon. After Amazon removed Defendants' product listing, Defendants brazenly relisted the product. Later, after Plaintiffs registered the marks in 2023, Defendants continued their unlawful activity by reproducing identical or substantially indistinguishable versions of THE GOAT® word and design marks—the latter of which is uniquely recognizable by color and design—on their products. They have ignored Plaintiffs' requests that they cease and desist these activities, and they have ignored this lawsuit. Moreover, because Defendants have failed to appear and defend, the Court is unable to determine whether Defendants have

ceased offering for sale counterfeit versions of Plaintiffs' Roof Climbing Tools. *See Volkswagen AG v. iman365-usa*, No. 18-cv-06611, 2020 WL 977969, at *7 (N.D. Ill. Feb. 28, 2020) ("[N]ot only is there a need to deter trademark infringement generally, but there is also a heightened need to deter future violations by this Defendant, who 'continues to offer for sale [products] that appear to be counterfeits . . . .'") (citation omitted).

Defendants' failure to defend this action also leaves Plaintiffs unable to calculate their damages. And, as the Court noted, Defendants' lack of cooperation thus far convinces the Court that ordering Defendants to provide records would be inefficient, unsuccessful, and cause Plaintiffs to incur even more costs. *See Pure MLK Last Stop, Inc.*, 2013 WL 5888139, at *3 ("[D]ue to Defendant's default, no true accounting of how many counterfeit items Defendant produced and sold can be accurately known.").

What is particularly concerning about Defendants' operation is that Defendants sell their counterfeit versions of the Roof Climbing Tools using third party e-commerce sites, where they can post any number of listings on any number of websites. Even an infringement report to these websites is not sufficient to deter Defendants. This factor strongly weighs in favor of the full statutory award that Plaintiffs request. *See Luxottica Grp. S.p.A. v. Li Chen*, No. 16 C 6850, 2017 WL 836228, at *3 (N.D. Ill. Mar. 2, 2017) ("Defendant had the potential to reach a wide audience with its counterfeit goods because it advertised them on the internet, allowing for distribution far greater than if it sold the [goods] in a brick-and-mortar store.") (citing *Luxottica USA LLC v. P'ships & Unincorporated Assocs. Identified on Schedule A*, No. 14 C 9061, 2015 WL 3818622, at *2–3 (N.D. Ill. June 18, 2015), *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11CV468-PBS, 2014 WL 888902, at *4 (N.D.

Ind. Mar. 6, 2014), and *Coach, Inc. v. Becka*, No. 5:11-CV-371(MTT), 2012 WL 5398830, at *6 (M.D. Ga. Nov. 2, 2012)).

For all these reasons, on balance, the Court concludes that a statutory damages award of $100,000 per mark (for a total of $200,000) is appropriate in this case, for which Newgard and Advanced Wholesale are jointly and severally liable. *See 3D Designers Inspirations*, 70 F. Supp. 3d at 950 (imposing joint and several liability under § 1117(c)).

### 4.4    Attorneys' Fees and Costs

Plaintiffs request $6,750 in attorney's fees and a total of $2,102 in costs ($402 in filing fees and $1,700 in fees used for investigation and service). ECF No. 8 at 8; ECF No. 7-1 at 3; ECF No. 9 at 2.[6]

Both the Lanham Act and the Patent Act allow for an award of attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a); 35 U.S.C. § 285. "In the context of trademark infringement and unfair competition, the term 'exceptional case' . . . is generally understood to include one involving proven fraud, bad faith or willful or deliberate infringement." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 638 (N.D. Ill. 2016) (citing *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1218 (9th Cir. 2003), *Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*, 500 F. Supp. 2d 770, 784 (N.D. Ill. 2007), and *Microsoft Corp. v. V3 Sols., Inc.*, No. 01 C 4693, 2003 WL 22038593, at *15 (N.D. Ill. Aug. 28, 2003)). In patent infringement cases, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the

---

[6]In one area of their submissions, Plaintiffs request "[$]67500.00" in attorney's fees. ECF No. 8 at 7. Because the $6,750 figure is used multiple times elsewhere, this is the figure that the Court will consider.

unreasonable manner in which the case was litigated." *Brady Worldwide, Inc. v. Haz-Mat Response Techs., Inc.*, No. 15-CV-643-JPS, 2016 WL 7839150, at \*4 (E.D. Wis. Aug. 17, 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

In both patent and trademark infringement cases, one factor suggesting that the case may be "exceptional" is a defendant's default and/or failure to defend. *See MetroPCS*, 215 F. Supp. 3d at 638 ("[A] case may be deemed 'exceptional' and merit an award of attorneys' fees under the Lanham Act when the Defendants disregard legal proceedings.") (quoting *Lien v. Compusoft of Kalamazoo, Inc.*, No. 1:89CV-104, 1991 WL 641575, \*5 (W.D. Mich. Mar. 13, 1991)); *Screenco Sys., LLC v. Scott Septic & Portables, Inc.*, No. 123CV00305JPHCSW, 2024 WL 1307142, at \*3 (S.D. Ind. Mar. 26, 2024) ("Given the Defendants' failure to respond to this lawsuit and the strength of [Plaintiffs'] allegations regarding Defendants' willful infringement, the Court will award reasonable attorneys' fees under § 285.").

The Court finds that this is an "exceptional" case within the meaning of 15 U.S.C. § 1117(a) and 35 U.S.C. § 285; therefore, attorney's fees are appropriate. "In accepting [Plaintiffs'] allegations as true, as the Court must in the context of default judgment, [Plaintiffs'] allegations of willfulness support a finding that this case is exceptional and justif[y] awarding attorneys' fees." *Brady Worldwide, Inc.*, 2016 WL 7839150, at \*5 (citing *e360 Insight*, 500 F.3d at 602 and *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002)). Defendants have also "litigated" this case in a highly unreasonable manner. They ignored Plaintiffs' requests to cease and desist prior to the filing of this suit, apparently called Plaintiffs after the suit was filed to state that they did not infringe, yet they have not retained counsel

or made any serious effort to defend this suit. Plaintiffs' request for $6,750 in fees is both modest and reasonable considering the procedural posture of the suit. *See id.* (finding $20,000 in attorney's fees reasonable at default judgment posture). The same is true for the requested amount of costs, particularly given the significant difficulty involved in investigating Defendants' whereabouts for service purposes. As such, Plaintiffs are entitled to an award of $6,750 in attorney's fees and $2,102 in costs.

5.    **CONCLUSION**

For all the reasons set forth herein, the Court grants in part and denies in part Plaintiffs' motion for default judgment. ECF No. 7. The Court will award statutory damages to Plaintiffs in the amount of $100,000 per mark, for a total of $200,000, plus $6,750 in attorney's fees and $2,102 in costs. The Court will also enter a permanent injunction against Defendants' infringing activity discussed herein by separate order entered contemporaneously with this Order.

Accordingly,

**IT IS ORDERED** that Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves' motion for default judgment, ECF No. 7, be and the same is hereby **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves' standalone claim for unfair competition under the Lanham Act, ECF No. 1 at 13–14, be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves' claim for violations of Wis. Stat. § 100.20, ECF No. 1 at 15–16, be and the same is hereby **DISMISSED with prejudice**;

IT IS FURTHER ORDERED that default judgment as to liability be entered in favor of Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves and against Defendants Advanced Wholesale LLC and Nicholas Newgard on Plaintiffs' claims for patent infringement, trademark infringement in violation of the Lanham Act, false designation of origin in violation of the Lanham Act, trade dress infringement in violation of the Lanham Act, and violations of Wis. Stat. § 100.18;

IT IS FURTHER ORDERED that default judgment be entered in favor of Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves and against Defendants Advanced Wholesale LLC and Nicholas Newgard, jointly and severally, in the amount of $208,852 ($200,000 in statutory damages under 15 U.S.C. § 1117(c), $6,750 in attorney's fees, and $2,102 in costs);

IT IS FURTHER ORDERED that Defendants Advanced Wholesale LLC and Nicholas Newgard are to deliver to Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves, or to confirm by certification under pain and penalty of perjury the destruction of, all infringing Roof Climbing Tools, and all plates, molds, casts, matrices, and other tools for the manufacture of the same, within **ten (10) days of this Order**;

IT IS FURTHER ORDERED that Defendants Advanced Wholesale LLC and Nicholas Newgard are to deliver to Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves, or confirm by certification under pain and penalty of perjury the destruction of, all promotional, marketing, and/or advertising materials bearing in any manner THE GOAT® word and design marks or any colorable imitations or variations thereof, within **ten (10) days of this Order**;

**IT IS FURTHER ORDERED** that Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves are entitled to permanent injunctive relief which will be entered by separate order; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter default judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of April, 2024.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge