# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| THE GOAT LLC, DANIEL WEBSTER, and GARY GRAVES, | |
| Plaintiffs, | Case No. 23-CV-1526-JPS |
| v. | |
| ADVANCED WHOLESALE LLC and NIKOLAS NEWGARD, | **ORDER** |
| Defendants. | |

In April 2024, the Court granted Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves's ("Graves") (together, "Plaintiffs") motion for default judgment against Defendants Advanced Wholesale LLC ("Advanced Wholesale")[1] and Nikolas Newgard ("Newgard") (together, "Defendants"). ECF No. 11. As a result, the Court entered both a permanent injunction and a default judgment against Defendants. ECF Nos. 12, 13.

In May 2024, Defendants moved to vacate the default judgment and the permanent injunction. ECF No. 16; ECF No. 17 at 16. The motion is now fully briefed. ECF Nos. 17, 20, 22. After considering the parties' briefs and relevant deposition testimony, and for the reasons set forth below,

---

[1] Certain testimony has called into question whether Advanced Wholesale is currently a legal entity—*see* ECF No. 27-1 at 6–7 (Nikolas Newgard confirming that he is aware that Wisconsin lists Advanced Wholesale as being dissolved in May 2024)—but because this case was brought before that dissolution occurred and because that same testimony reflects that Advanced Wholesale is or soon will likely be in the process of reinstatement, the Court will not address the issue at this juncture. The parties should provide additional information to the Court if they become aware of a jurisdictional concern.

Defendants' motion to vacate will be granted, contingent upon their payment of certain of Plaintiffs' attorneys' fees, and Plaintiffs will be allowed sixty (60) days from the date the judgement is vacated in which to properly effectuate service of process.

## 1.    PROCEDURAL HISTORY

Prior to filing the complaint, Plaintiffs "attempted to communicate with . . . Defendants by certified mail" to Defendants' Deerfield, Wisconsin address, "which is listed with the Secretary of State as the registered address for Advance[d] Wholesale LLC." ECF No. 9 at 1. Plaintiffs then filed this action on November 14, 2023. ECF No. 1. According to Plaintiffs, Newgard called them on December 8, 2023, after this action had been filed but before service of process, to "den[y] that any infringement occurred." ECF No. 9 at 2; ECF No. 20 at 1–2.

Thereafter, Plaintiffs hired a private investigator and process server to locate and serve Defendants with the complaint and summonses. ECF No. 9 at 1. Plaintiffs "determined that Defendants had abandoned their affiliation with the Deerfield, Wisconsin address." ECF No. 8 at 2. After expending "substantial effort," the private investigator and process server located Newgard at an address in Baldwin, Wisconsin. *Id.* According to the process server's affidavits, signed under penalty of perjury, the process server, Erika Maghakian ("Maghakian"), personally served Newgard at the Baldwin, Wisconsin address on December 27, 2023. ECF No. 5 ("Made contact with Ni[k]olas Newgard at the front door and signa[l]ed to meet in the garage where he was served."); ECF No. 21 at 3 ("Made contact with Nik Newgard at the front door as he sat at a computer desk. He met me in the garage."); *id.* at 5 ("Made contact with Nik Newgard at the front door,

as he asked me to meet him in garage as he sat at his desk in the office. We met in the garage.").[2]

If Defendants were served, as Maghakian's affidavit suggests, their response to the complaint was due by January 17, 2024. Fed. R. Civ. P. 12(a)(1)(A)(i). On January 23, 2024, given the lack of a timely responsive pleading from Defendants, the Court ordered Plaintiffs to either request entry of default or to update the Court as to the status of the case. Jan. 23, 2024 text order. On February 6, 2024, Plaintiffs requested entry of default. ECF No. 7. The Clerk of Court entered default on February 7, 2024. Feb. 7, 2024 Docket Entry. Plaintiffs also simultaneously moved for default judgment and represented that they had served the motion and

---

[2]Defendants do not dispute that Advanced Wholesale may be served through service on Newgard. In the interest of completeness, the Court reproduces its analysis from its order on the motion for default judgment on this point:

> Plaintiffs plead that Newgard is the "founder and principal officer" of Advanced Wholesale. ECF No. 1 at 2. The Court takes judicial notice of the Wisconsin Department of Financial Institutions public database, which confirms that Newgard is the registered agent of Advanced Wholesale. Wis. Dep't of Fin. Insts., *available at* https://perma.cc/84ZZ-8SW7 (last visited Apr. 12, 2024); *Ambrosetti v. Or. Cath. Press*, 458 F. Supp. 3d 1013, 1016 n.1 (N.D. Ind. 2020) ("[T]he Court may take judicial notice of public record information obtained from an official government website.") (citing *Betz v. Greenville Corr. Inst.*, No. 14-cv-104-MJR, 2014 WL 812403, at *1 (S.D. Ill. Mar. 3, 2014); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); and *Laborer's Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002)).

> Advanced Wholesale may therefore be served by, as here, service of the summons and complaint on Newgard. *See Krispy Krunchy Foods LLC v. Silco LLC*, No. 20-CV-293-PP, 2023 WL 2465881, at *2 (E.D. Wis. Mar. 10, 2023) (citing Fed. R. Civ. P. 4(h)(1)(A) and (e)(1), and Wis. Stat. § 801.11(5)(a)); *see also* Wis. Stat. § 183.0119.

ECF No. 11 at 2 n.2.

accompanying papers on Defendants by mail at the same Baldwin, Wisconsin address where Defendants were personally served. ECF No. 7 at 2; *see also* ECF No. 5.

On February 21, 2024, while the motion for default judgment was pending, the Clerk of Court docketed a letter from Newgard dated February 15, 2024. ECF No. 10. Therein, Newgard informed the Court that "[o]n February 13, 2024, [he] returned from vacation" to find Plaintiffs' mailing containing the motion for default judgment papers. *Id.* at 1. Newgard argued that despite Plaintiffs' statement in the motion that Defendants had been served with the complaint and summonses on December 27, 2023, neither "[he] nor any other representative for Advanced Wholesale ha[d] been served." *Id.* Newgard requested "an appropriate and reasonable amount of time to seek counsel and properly defend Advanced Wholesale LLC within this case." *Id.*

The Court held the motion for default judgment in abeyance for over seven weeks after receiving Newgard's letter. ECF No. 11 at 3. In that time, the Court received no further contact from Newgard, and no attorney appeared on behalf of either Newgard or Advanced Wholesale. *Id.*[3] Consequently, the Court proceeded to consider the motion for default judgment. In its order on that motion, the Court liberally construed Newgard's letter as a Rule 55(c) motion to set aside default. *Id.* Even construing the letter as such, the Court held that the entry of default would stand. *Id.* at 3–5.

---

[3]As the Court previously noted, "[o]nly Newgard could have appeared without counsel because 'limited liability companies may not appear *pro se*.'" ECF No. 11 at 3 n.2 (quoting *Ghetto Dope Recordzs LLC v. Dep't of the Treasury*, No. 22-CV-0229-BHL, 2022 WL 4273173, at *1 (E.D. Wis. Sept. 15, 2022)).

The Court so held for two reasons. First, although Newgard "ostensibly took quick action—following receipt of the motion for default judgment papers—to mail his letter to the Court requesting time to seek counsel, his conduct before that and since then ha[d] been dilatory and exhibited a willful choice to avoid this litigation." *Id.* at 4 (citing *Koala Corp. v. Wizard Works Prod. Dev. Co.*, No. 03-C-0429-C, 2003 WL 23218094, at *1 (W.D. Wis. Dec. 5, 2003)). Second, the Court found that the over seven-week lapse that Newgard allowed to pass after he sent his letter—which could very well have continued indefinitely had the Court not proceeded to adjudicate the motion—was "bolstered both by Plaintiffs' representation that Newgard called them regarding the allegations set forth in this suit after it was filed, as well as the process server's signed return of service stating that Newgard was personally served with the summons and complaint on December 27, 2023 at the same address where he claims to have received the default judgment motion papers." *Id.* (citing ECF No. 9 at 2; ECF No. 5; and collecting cases). After holding that the entry of default stood, the Court proceeded to the merits of the motion for default judgment and granted the motion, entering both default judgment and a permanent injunction accordingly. ECF Nos. 11, 12, 13.

Approximately five weeks later, on May 20, 2024, counsel appeared on behalf of Defendants and filed the instant motion to vacate the default judgment and permanent injunction. ECF Nos. 15, 16.

## 2. TESTIMONY REGARDING SERVICE OF PROCESS[4]

In considering the parties' briefs regarding the motion to vacate, ECF Nos. 17, 20, 22, the Court determined that an evidentiary hearing was required due to conflicting declarations about whether service of process was completed, ECF No. 23 at 2–3 (collecting cases). The Court scheduled an in-person evidentiary hearing, July 23, 2024 notice of hearing, but the parties jointly moved to adjourn the hearing and proposed replacing it with submissions of video depositions on the issue of service. ECF Nos. 24, 25; *see also* Sept. 25, 2024 text order. The Court granted the motion to adjourn and authorized the parties to proceed with video depositions as proposed. Nov. 7, 2024 text order. The parties submitted video depositions and corresponding transcripts for Newgard and Maghakian in December 2024. The following is a summary of the key testimony provided by Newgard and Maghakian.

Newgard testified that he is the owner, sole employee, and registered agent of Advanced Wholesale. ECF No. 27-1 at 5. Newgard also testified about the various addresses and headquarters associated with Advanced Wholesale going back several years. *See id.* at 7–11 (describing numerous of Newgard's addresses that, at times, corresponded and, at other times, did not correspond with Advance Wholesale's address); *see also id.* at 10 (admitting that in December 2023, Advanced Wholesale "didn't have an established address); *see also id.* at 20–21 (describing that the only way to physically correspond with Advanced Wholesale in December 2023 was through its P.O. box, but that P.O. box was not listed with Wisconsin's

---

[4]Facts within this section contain cites to the record. Where these facts are subsequently relied upon in the Order, citations are omitted.

Case 2:23-cv-01526-JPS    Filed 03/07/25    Page 6 of 28    Document 30

Department of Financial Institutions); *compare* ECF No. 18 at 2 (Newgard averring that the registered agent address for Advanced Wholesale as of May 2024 was 424 Pheasant Ct., Deerfield, WI) *with* ECF No. 27-1 at 8 (Newgard testifying that Advance Wholesale moved from 424 Pheasant Court in mid or late 2020 and that it has not been associated with that address since).

In December 2023, Maghakian worked as an independent contractor as a process server. ECF No. 28-1 at 7–8. Maghakian and Newgard agree on several aspects of what occurred on December 27, 2023. Newgard's address at that time—2221 County Road DD, Deerfield, WI—was under construction. ECF No. 27-1 at 14; ECF No. 28-1 at 11. On December 27, Newgard saw a woman, who we now know was Maghakian, knocking on a front window of his residence at 2221 County Road DD. ECF 27-1 at 16; ECF No. 28-1 at 11. Maghakian adds the detail that Newgard was sitting at a desk in view of the front windows when she knocked. ECF No. 28-1 at 11. In response to Maghakian's tapping, Newgard indicated to her to meet him in the garage. ECF 27-1 at 16–17; ECF No. 28-1 at 11. Newgard adds the detail that the garage was attached to the dwelling. ECF No. 27-1 at 14–15. Newgard then met Maghakian in his garage.[5] *Id.* at 17. Maghakian was holding an envelope at that time. *Id.* at 22. Newgard and Maghakian then had a brief conversation, but here their testimony diverges.

---

[5]Newgard's declaration about service indicated that he met Maghakian in his "driveway," *see* ECF No. 18 at 2, but his deposition testimony is inconsistent as to where he met her, *compare* ECF No. 27-1 at 17 (indicating that he met Maghakian in his garage) *with id.* at 18 (denying that he was in the garage when meeting Maghakian and that she was not in the garage either). Maghakian similarly seemed uncertain about where the conversation occurred, saying that Newgard was not served in the garage, but that at some point during their conversation they entered the structure of the garage. ECF No. 28-1 at 11, 14.

According to Newgard, Maghakian asked whether the address was 2221 County Road DD, which he confirmed, and she also asked him if their location was the headquarters of Advanced Wholesale, which he denied. *Id.* at 18, 20. Newgard denies or cannot recall any other parts of their conversation. *Id.* at 19, 22. According to Newgard, Maghakian then walked back to her car and drove away, at which point he and his wife went for a walk. *Id.* at 22–23. Newgard testified that he did not recall when he returned from that walk. *Id.* at 23. Newgard denies knowing that Maghakian returned to his property after he left for a walk and denies having heard any statements from Maghakian after their initial conversation. *Id.* at 24–25, 27. Newgard further testified that he did not notice any complaint left at his residence, though he did not search for one in his home or his truck. *Id.* at 27–28, 30.

In contrast, Maghakian testified that she first asked Newgard if she was at the right address (presumably 2221 County Road DD), which he confirmed. ECF No. 28-1 at 11–12. Then she asked if Newgard was Nikolas Newgard, and he responded, "No." *Id.* at 12. Maghakian then asked if Newgard knew a Nikolas Newgard, to which he responded, "Never heard of him." *Id.* Maghakian then asked him about Advanced Wholesale, which he also denied knowing. *Id.* Maghakian apologized for bothering him and "[w]ent on [her] way." *Id.* Maghakian also testified that Newgard was acting aggressively during this conversation and giving her the impression that he did not want to speak with her. *Id.* at 33–34. Maghakian further stated that she had the legal documentation she needed to serve in her hands when she was talking with Newgard, and that she was pointing to it while asking him questions. *Id.* at 35. However, nothing in her testimony

suggests that she ever informed Newgard what the documents were. *See generally* ECF No. 28-1.

While still on Newgard's "long" driveway, Maghakian called her boss—private investigator, Tim Browne ("Browne")—to inform him about the "strange" situation whereby the address was correct but the individual she spoke with ostensibly did not know of either party that needed to be served. *Id.* at 12. Browne then sent her a photo of Newgard's picture ID and she confirmed that the person she had spoken to, who had denied being Nikolas Newgard, was, in fact, Newgard. *Id.* She then "immediately turned around." *Id.* After being gone for no more than two minutes, Maghakian returned to the property and looked for Newgard but could not find him. *Id.* at 12–13. She spent five to ten minutes knocking on windows and calling out Newgard's name, but she did not find him. *Id.* at 13. Maghakian then put the legal documentation—the complaint and the summonses—in between the handle and door of Newgard's registered truck in his driveway. *Id.* at 13–15. Maghakian also took a picture of Newgard's truck and where she left the paperwork. *Id.* at 26–28 (citing ECF Nos. 28-5 and 28-6). Before she left, Maghakian announced that she left paperwork for him in his truck handle. *Id.* at 25–26. At no point did Maghakian hand Newgard the summons and complaint, nor did she leave them in his physical proximity. *Id.* at 15.

As to additional details, Newgard testified that there were multiple vehicles parked at 2221 County Road DD on December 27, 2023. ECF No. 27-1 at 25, 30. Newgard's personal Ford pickup truck was also parked in his driveway on that day. *Id.* at 25. Maghakian testified, however, that she only witnessed one vehicle on the property at the time she attempted to serve Newgard, and that was his truck. ECF No. 28-1 at 15–16.

Newgard also gave the following explanation for the phone call he had with Graves, named Plaintiff and co-founder of additional Plaintiff The Goat LLC, on December 8, 2023. He testified that he recalls calling Graves that day but does not recall their actual conversation. *Id.* at 32, 35. When asked why he reached out to Graves, Newgard stated that it was "[t]o inquire on what [he] had read on Goggle [sic] online," further explaining that he had read "kind of the headline of Advanced Wholesale and The Goat." *Id.* at 33. Newgard testified that he could not recall what the headline stated nor what the article was about. *Id.* He supposedly was prompted to perform a Google search of his name because there was a "suspicious person," whom he never spoke to, in his driveway. *Id.* at 34. When asked "what about that suspicious person in the driveway caused [him] to" perform the Google search, he responded, "I don't know. Just to see if anything was out there." *Id.* Newgard said he could not recall whether, during that December 8 conversation, Graves mentioned anything about legal proceedings against Advanced Wholesale and himself. *Id.* at 36–38. He further stated that he "wasn't aware [of legal proceedings by The Goat LLC against Advanced Wholesale and himself] but that title [he] read suggested something, and [he] believe[s] that is why [he] called Gary," referring to the article that came up when he performed a Google search of his name. *Id.* Newgard admitted, however, that at the time of his December 8 phone call with Graves, he had "a suspicion that there were legal proceedings pending against Advanced Wholesale" and himself. *Id.* at 38–39.

Maghakian further testified that, had Newgard been honest about his identity when she asked him during their encounter, she "would have then taken [the legal] documentation and put it in his hand." ECF No. 28-1

at 30; *see also id.* at 15 ("Q: Did you leave the papers in [Newgard's] physical proximity? A: "I did not because he denied his identity.").

**3.     FINDINGS AS TO CREDIBILITY OF WITNESS TESTIMONY**

Based on the video depositions of Newgard and Maghakian, the Court, having weighed their credibility and testimony, finds that the following occurred. First, the Court credits Plaintiffs' account that they expended substantial effort in locating an address where they could serve Defendants in this action. Whether willfully or unintentionally, Advanced Wholesale was effectively unreachable by mail in December 2023, as Newgard testified that Advanced Wholesale "didn't have an established address" at that time. ECF No. 27-1 at 10. Newgard admitted that the only way to physically correspond with Advanced Wholesale in December 2023 was through its P.O. box, but that P.O. box was not listed with Wisconsin's Department of Financial Institutions. Newgard further stated that the registered agent address for Advanced Wholesale as of May 2024 was 424 Pheasant Ct., Deerfield, but he also testified that Advance Wholesale moved from 424 Pheasant Ct. in mid or late 2020. It is understandable, then, why Plaintiffs resorted to hiring a private investigator to serve Defendants.

Pertaining to the dispositive facts of what happened at 2221 County Road DD on December 27, 2023, the Court finds that Maghakian and Newgard exchanged a conversation, during which Maghakian asked Newgard to confirm the address, which he did. Maghakian then asked Newgard if he was Nikolas Newgard or knew of him, and he lied, responding no. Newgard further lied by denying knowledge of Advanced Wholesale. Maghakian then apologized and left. At no point during this conversation did Maghakian explicitly say that she had legal

documentation for Newgard or Advanced Wholesale, though she did point to the paperwork in her hands. *See* ECF No. 28-1 at 35.

Shortly after driving away from Newgard's home, Maghakian returned because her boss, Brown, helped her confirm Newgard's identity using photo identification. When she returned, however, Newgard could not be found. She spent several minutes looking for him and yelling to get his attention but could not find him. At that point, Maghakian announced that she was leaving legal documentation for Newgard and Advanced Wholesale, wedged the documentation between the mirror and door of Newgard's truck, took photos of his truck and the paperwork, and left. She thereafter filled out an affidavit of service, swearing that she had personally served Newgard and Advanced Wholesale. ECF No. 5; *see also* ECF No. 28-1 at 9 (referring to ECF No. 28-2). There is no evidence that Plaintiffs again attempted to serve Defendants either personally or via alternative means, nor did they seek leave from the Court regarding service.

The Court further finds that Defendants had actual notice of the suit against them by no later than December 8, 2023. This conclusion is bolstered by the incomprehensible explanation Newgard provided surrounding the context of his December 8 call to Graves. The Court does not find credible Newgard's explanation that he saw a suspicious individual in his driveway that somehow prompted him to search his name on Google, after which point he saw an article's headline—which he cannot now remember in any substantive detail—that further prompted him to call Graves, but that he cannot remember any of the substance of that call. The Court further takes issue with his assertions that he wasn't aware of legal proceedings against him but instead was merely suspicious of that possibility. The Court finds Plaintiffs' explanation more credible: Newgard learned of the pending suit

against himself and Advanced Wholesale and called Graves on December 8, 2023 to discuss it. *See* ECF No. 9 at 2; ECF No. 20 at 1–2.

**4.    LEGAL STANDARD, ARGUMENTS, AND ANALYSIS**

The Court "may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "[R]ule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *C.K.S. Eng'rs, Inc.*, 726 F.2d at 1205 (citations omitted). In the default judgment context, Rule 60(b) "is applied liberally . . . only in the exceptional circumstance where the events contributing to the default judgment have not been within the meaningful control of the defaulting party, or its attorney." *Id.* at 1206. Seventh Circuit decisions "reflect the notion that the district court must have the default judgment readily available within its arsenal of sanctions 'in order to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not.'" *Id.* (quoting *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1230 (7th Cir. 1983)).

In their motion to vacate, Defendants proffer several arguments. They contend that Newgard "was never served or even handed or provided a copy of the Complaint and summons as certified by Plaintiff[s'] proof of service or otherwise." ECF No. 17 at 2 (citing ECF No. 18 at 2). They filed a declaration, signed by Newgard under penalty of perjury, attesting to the same. ECF No. 18 at 2. According to Defendants, the affidavits of service submitted by the process server and private investigator "completely contradict[]" one another because "[t]he server necessarily could have not made contact with . . . Newgard at the front door as he sat at his desk in the office . . . ." ECF No. 22 at 3. Defendants also argue that the process server and private investigator's affidavits do not indicate "how, exactly, [she] served the Defendants." *Id.* Newgard supports this statement by asserting

that, on or about December 27, 2023, "a woman came via car to" the Baldwin, Wisconsin address where he lives and met Newgard in the driveway. ECF No. 18 at 2. Newgard swears that the woman asked him about the address, Newgard responded, and the woman "walked back to her car and drove away," without handing Newgard the complaint and summons. *Id.* He avers as well that she did not leave a copy of the complaint and summons at the location and that the first time he "became aware of this case" was in February 2024 when he received the default judgment motion papers in the mail. *Id.*

Alternatively, Defendants argue that the default judgment and associated permanent injunction should be set aside due to Defendants' excusable neglect. ECF No. 17 at 6. Defendants assert that there is good cause for the default because they were never properly served, Defendants did not intend to avoid the lawsuit as Newgard only became aware of it in February 2024, and they "expected to hear back from the court on an approval or denial of the extension letter." *Id.* at 7–8. Defendants also contend that even if there is no good excuse for their default, good cause exists for the Court to vacate the default because the damages awarded are disproportionate to the wrong. *Id.* at 9 (citing *Sims v. EGA Prod., Inc.*, 475 F.3d 865 (7th Cir. 2007)). Defendants argue that they responded in a timely and reasonable manner to address the default judgment, *id.* at 10–12, and that they have meritorious defenses to Plaintiffs' claims, *id.* at 12–16.

Tracking their above-summarized arguments, Defendants move to vacate the default judgment and permanent injunction under Federal Rules of Civil Procedure 60(b)(4) and 60(b)(1). ECF No. 17 at 2–4. The Court takes up each in turn.

### 4.1 Rule 60(b)(4): Service of Process

Rule 60(b)(4) provides that the Court may relieve a party from a final judgment if "the judgment is void." Under Rule 60(b)(4), "a default judgment entered against a defendant is void if the plaintiff did not properly serve the defendant." *Fed. Equip. Corp. v. Puma Indus. Co.*, 182 F.R.D. 565, 567 (N.D. Ill. 1998) (citing *Fleet Mortg. Corp. v. Wise*, No. 92 C 1102, 1997 WL 305319, at *1 (N.D. Ill. May 29, 1997)). "The burden is on the defendant to show that the judgment is void for lack of service of process." *Id.* (citing *Trs. of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 n.2 (7th Cir. 1991) and *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986)); *see Krahenbuhl v. Ostrich Ranchers Ltd. P'ship*, No. 96-C-246, 2007 WL 3012712, at *3 (E.D. Wis. Oct. 12, 2007) (citing *Emery v. Emery*, 369 N.W.3d 728 (Wis. 1985)). Defendants argue under Rule 60(b)(4) that the default judgment, as well as the associated permanent injunction, are void because Newgard was not properly served with process. ECF No. 17 at 4–6.

"A signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (quoting *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir. 1955) and citing *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808–09 (7th Cir. 1969)). The presumption applies with greatest force where, as here, the "address [and] receiving individual [are] specified on the return of service," and where the return of service indicates the method of service. *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005).

Service on an individual within the United States is governed by Federal Rule of Civil Procedure 4(e). Rule 4(e)(1) permits service of process

Case 2:23-cv-01526-JPS    Filed 03/07/25    Page 15 of 28    Document 30

by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Here, both the service attempt and the district court are in Wisconsin, so Plaintiffs were permitted to follow Wisconsin's service laws, which are stated in WIS. STAT. § 801.11. Wisconsin requires a plaintiff to exercise reasonable diligence at personal service in the first instance. WIS. STAT. § 801.11(1)(a). Only if that is not successful may a plaintiff attempt to serve a defendant by leaving the summons at the defendant's usual place of abode with a competent adult or member of the defendant's family who is informed of the summons' contents. WIS. STAT. § 801.11(1)(b). Only when a plaintiff's reasonable diligence under *both* methods fails may it then serve a defendant via publication. WIS. STAT. § 801.11(1)(c). Rule 4(e)(2) also permits an individual to be served by

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Service on an LLC is governed by Rule 4(h), which permits service "in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to . . . any . . . agent authorized by appointment or by law to receive services of process." The parties agree that Newgard was an agent for Advanced Wholesale for the purposes of service, *see supra* note 2, so the Court will accordingly address whether service upon Newgard was effectuated under Rule 4(e).

First, the deposition testimony of Maghakian overcomes the presumption of proper service from the signed return of service, ECF No.

5, by "strong and convincing evidence." *O'Brien*, 998 F.2d at 1398 (quoting *Hicklin*, 226 F.2d at 414 and citing *Taft*, 407 F.2d at 808–09). To comply with Rule 4(e)(2), Plaintiffs must have either (1) "deliver[ed] a copy of the summons and of the complaint to the individual personally;" (2) "le[ft] a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who reside[d] there; or" (3) "deliver[ed] a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(A)–(C). Maghakian did none of the three. She did not hand the summons and complaint to Newgard or to any person, nor did she leave them in an individual's physical proximity. Instead, she wedged them between the mirror and door of Newgard's truck when—based upon her testimony—no one was around. That does not meet the requirements of service under Rule 4(e)(2).

Nor did Maghakian's actions meet Wisconsin's service requirements under WIS. STAT. 801.11, as permitted by Rule 4(e)(1), because Plaintiffs' one attempt at service, via Maghakian, does not establish that they exercised reasonable diligence. While "[r]easonable diligence does not require 'all possible diligence which may be conceived,' . . . it does require a plaintiff to 'exhaust . . . any leads or information reasonably calculated to make personal service possible.'" *Wis. Laborers Health Fund v. Sup. Sewer & Water, Inc.*, No. 21-CV-193-JDP, 2021 WL 6333911, at *1 (W.D. Wis. Sept. 7, 2021) (first quoting *Haselow v. Gauthier*, 569 N.W.2d 97, 101 (Wis. Ct. App. 1997) then quoting *Cunningham v. Montes*, No. 16-cv-761-jdp, 2018 WL 2390118, at *2 (W.D. Wis. May 25, 2018) and then citing *West v. West*, 262 N.W.2d 87, 89 (Wis. 1978)). It is unclear to the Court whether the lack of diligence was made known to Plaintiffs, or whether the process server communicated that process was effectuated without further details.

Either way, "[c]ounsel are responsible for supervising their process servers," *Sullivan v. Mitchell*, 151 F.R.D. 331, 334 (N.D. Ill. 1993) (citations omitted), and after the failed attempt at process on December 27, 2023, Plaintiffs and the process server did nothing. They did not again attempt to serve Newgard at his residence, even though they had just confirmed his address and identity, which are certainly "lead[s] . . . calculated to make personal service possible." *Cunningham*, 2018 WL 2390118, at *2 (citation omitted). Nor did they move the Court for leave to serve Defendants via alternative means. *See Cunningham v. Montes*, 883 F.3d 688, 689 (7th Cir. 2018) ("[W]hen reasonable diligence has not succeeded in producing service in hand, then a court may authorize service by publication" (internal quotation marks omitted)). "[A] defendant's attempts to evade service do not absolve a plaintiff of the requirement to exercise reasonable diligence in attempting to serve the defendant . . . ." *Wis. Laborers Health Fund*, 2021 WL 6333911, at *2 (quoting *Cunningham*, 2018 WL 2390118, at *2 and citing *Keefe v. Arthur*, No. 00-0016-C, 2003 WL 23109616, at *2 (W.D. Wis. Aug. 20, 2003)); *see Russell v. PS 27 Fam. Ltd. P'ship*, No. 1:23-cv-00405-HAB-SLC, 2024 WL 478208, at *2–3 (N.D. Ind. Jan. 17, 2024) (finding that service was improper despite defendant's evasion of service). And this is not a case where Plaintiffs repeatedly tried to serve Defendants over the course of several months, with Defendants continually evading service. *See Krahenbuhl*, 2007 WL 3012712, at *2–3. The Court finds that Plaintiffs' single attempt at service is inadequate to establish that they were reasonably diligent in attempting to serve Defendants. *See Wis. Laborers Health Fund*, 2021 WL 6333911, at *2. ("[T]he court isn't persuaded that a single attempt of service at two locations qualifies as making a reasonably diligent effort under the circumstances of this case." (citing *Ass'n of Egyptian-Am. Scholars*,

*Inc. v. Geriesh*, No. 09-cv-772-bbc, 2010 WL 3666996, at *2 (W.D. Wis. Sept. 15, 2010) and *Haselow*, 569 N.W.2d at 99)).

The Court notes that dicta in various cases suggests that a defendant may not evade service and then challenge whether service of process was proper. *See Swaim v. Moltan Co.*, 73 F.3d 711, 721 (7th Cir. 1996) (default is warranted when a defendant shows a continued "effort to avoid service of process and frustrate the efficient administration of justice" (citing *United States v. DiMucci*, 879 F.2d 1488, 1493 (7th Cir. 1989)); *Credit All. Corp. v. Campbell*, 845 F.2d 725, 730 (7th Cir. 1988) (the defendant "cannot now complain about the plaintiff's failure to notify her of the lawsuit when the failure was a result of defendant's own actions"); *Welty v. Heggy*, 369 N.W.2d 763, 771 (Wis. Ct. App. 1985) (affirming a trial court denying a motion to vacate a judgment where the "defendant purposely avoided service, and had actual notice of the action"); *Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 946 (10th Cir. 1987) ("[A] defendant cannot refuse or avoid service on a technical ground, and then exclaim he has not been correctly served."). However, Plaintiffs have not pointed the Court to a single case in which the plaintiff made only *one* failed attempt at service and nevertheless the court held that it had personal jurisdiction because the defendant evaded that single attempt at service. Rather, in each of the cases that suggest that evasion may deprive a defendant of a jurisdictional defense, courts noted plaintiffs' repeated attempts to comply with service requirements, their successful service via alternative means, that the failure to effectuate service was merely due to a technical ground, or that the defendant waived their argument in some way. *See Swaim*, 73 F.3d at 717, 721 (noting that plaintiff made three separate attempts at service and that defendant forfeited its jurisdictional argument by failing to raise it in its

Rule 60(b) motion); *Credit All.*, 845 F.2d at 730 (discussing how defendant could not insist upon receiving personal service of process when she had waived it); *Welty*, 369 N.W.2d at 768–69 (finding that plaintiffs exercised reasonable diligence in their repeated and varied attempts to serve the defendant); *Nikwei*, 822 F.2d at 944–45 (defendant was not permitted to "evade [Oklahoma's] notice statue on highly technical grounds by his acts of avoidance"); *see also Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301–02 (7th Cir. 1991) (rejecting a district court's decision to deny a motion to vacate default judgment due to improper service of process and stating that any "substantial compliance" with service rules may only cure a "purely technical error in the form of the documents under Rule 4" related to "an otherwise proper and successful delivery of process"); *id.* at 302 ("[T]he extent to which the plaintiff 'tried' to serve process should not be a factor as to whether a federal court has personal jurisdiction over a defendant. Rather, the requirements of Rule 4 are satisfied only when the plaintiff is successful in serving the complaint and summons on the defendant").[6] The Court accordingly finds that it has no personal jurisdiction over Defendants under the circumstances of this case.

---

[6]In their response brief, Plaintiffs also state that "a defendant's active avoidance of service of process is insufficient to establish that service was improper." ECF No. 20 at 5. In support, they cite a Northern District of Illinois case that was affirmed by the Seventh Circuit—*Relational, LLC v. Hodges*, No. 07-CV-415, 2009 WL 3188012 (N.D. Ill. Sept. 29, 2009), *aff'd*, 627 F.3d 668 (7th Cir. 2010). *Relational* does not stand for the proposition that Plaintiffs argue, however. The district court there found, and the Seventh Circuit affirmed, only that the testimony supporting that the defendant *was properly served* was more credible than the defendant's testimony that he was never served such that the defendant failed to provide "clear and convincing" evidence to overcome the prima facie presumption of service. *Id.* at *5. In making that finding, the district court acknowledged that the defendant seemed to have made service of process "unusually challenging" through his "active avoidance of contact." *Id.* This case

And, while troubling, the fact that Defendants had actual notice of the ongoing proceedings is not enough to establish the Court's personal jurisdiction. To the contrary, even when a party has actual notice of the proceedings, including of the summons and the complaint, service is still required to confer personal jurisdiction. *Welty*, 369 N.W.2d at 766 ("[W]hen a statute prescribes how service is to be made, compliance with the statute is required for personal jurisdiction even where the defendant has actual notice of the summons and complaint." (quoting *Horrigan v. State Farm Ins. Co.*, 317 N.W.3d 474, 477 (Wis. 1982))).

Further, while a party may "submit to the jurisdiction of the court by appearance," *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982), nothing in the record suggests that Defendants submitted themselves to the Court's jurisdiction despite the lack of proper service. While Newgard mailed a letter to the Court in February 2024, this letter cannot be construed as submitting himself to the Court's jurisdiction. First, as to Advanced Wholesale, an LLC may only appear by counsel, therefore Newgard's pro se letter could not be construed as an appearance on its behalf. *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 858 (7th Cir. 2011) (declining to find that a pro se letter from certain defendants could be deemed an appearance by a corporation defendant (citing *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985) and *United States v. Hagerman*, 549 F.3d 536, 537 (7th Cir. 2008)). As for Newgard personally, while his pro se letter does request "an appropriate and reasonable amount of time to seek counsel and properly defend . . . [against] this case," the

---

does not support that a court has personal jurisdiction when clear and convincing evidence shows that the defendant was not properly served merely because of a defendant's one-time evasion of service.

same letter can also be construed as contesting jurisdiction because it specifically states that neither Newgard "nor any other representative for Advanced Wholesale has been served." ECF No. 10 at 1. Following the Seventh Circuit's lead, the Court will not construe this as an appearance that would deny Newgard the opportunity to present a jurisdictional defense. *See Philos Techs., Inc.*, 645 F.3d at 858–59 (collecting cases).

Because the Court finds that Plaintiffs never effectuated service of process on Defendants, it is constrained to vacate the default judgment in this case, as it never had jurisdiction to enter it in the first instance. *Relational*, 627 F.3d at 671 ("[A] judgment is void as to any party who was not adequately served." (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Homer*, 415 F.3d at 752; and *Robinson Eng'g Co. Pension Plan and Tr. v. George*, 223 F.3d 445, 448 (7th Cir. 2003))); *Homer*, 415 F.3d at 753 ("If the district court had no jurisdiction over the movant, its judgment is void and it is an abuse of discretion to deny the movant's request to set aside the judgment under Rule 60(b)." (citing *George*, 223 F.3d at 448 and *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995))); *see also Haselow*, 569 N.W.2d at 99–100 (affirming an order vacating default judgment due to finding that the defendant was not properly served under Wisconsin law).

While the Court finds that Plaintiffs failed to exercise reasonable diligence in attempting to serve Defendants, it also finds that Newgard's blatant evasion gives them good cause for seeking to extend their time to properly effectuate service of process on Defendants. The fact that Defendants have actual notice of the action by now does not rid Plaintiffs of their obligation to properly serve them. *See Homer*, 415 F.3d at 758 ("[A]ctual notice does not by itself constitute valid service of process."

(citing *George*, 223 F.3d at 453; *Swaim*, 73 F.3d at 719; and *Mid-Continent Wood Prods, Inc.*, 936 F.2d at 301)). The Court will accordingly, sua sponte, grant Plaintiffs additional time to serve Defendants. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (a district court may, upon a finding that there was no effective service, either dismiss the case or "specify a time within which the plaintiff must serve the defendant," a decision which is "inherently discretionary" (first citing Fed. R. Civ. P. 4(m) then citing *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008))); *Huber v. Beth*, 654 F. Supp. 3d 777, 805 (E.D. Wis. 2023) ("When a defendant is evading service, there is good cause for extending the time to complete service." (citing *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002)); *Sullivan*, 151 F.R.D. at 333 ("Evasion of service . . . constitutes good cause for a delay in service" to support excusing a party from the deadline for service set by Rule 4). Plaintiffs shall properly serve Defendants within **sixty (60) days of the judgment being vacated**.

### 4.2 Rule 60(b)(1): Mistake, Inadvertence, Surprise, or Excusable Neglect

Rule 60(b)(1) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding" upon a showing of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

As the Rule 60(b)(1) standard has developed, a specialized three-part standard has evolved which squarely places the burden on the moving party to show: (1) "good cause" for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint. *Pretzel & Stouffer*, 28 F.3d at 45 (citing *DiMucci*, 879 F.2d at 1495). This standard was originally formulated with motions to vacate an entry of

default under Rule 55(c) in mind, *Breuer Elec. Mfg. v. Toronado Sys. of Am.*, 687 F.2d 182, 185 (7th Cir. 1982), but it was eventually applied to structure decisions involving motions to set aside default judgments under Rule 60(b), *id.* at 187. *See also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 250 (7th Cir. 1990).

While the tests are identical under either Rule 55(c) or Rule 60(b), respect for the finality of judgments results in the application of the test under Rule 60(b) circumstances—where a default judgment has been entered—to be much more limited and stringent. *Breuer*, 687 F.2d at 187 (citing *United States v. Topeka Livestock Auction, Inc.*, 392 F. Supp. 944, 951 (N.D. Ind. 1975) and *Ben Sager Chems. Int'l v. E. Targosz & Co.* 560 F.2d 805, 809 (7th Cir. 1977)). This narrowness is achieved by interpreting the three-part standard in light of the language of Rule 60(b)(1) which, by its very terms, establishes a high hurdle for parties seeking to avoid default judgments and requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing a default judgment. *N. Cent. Ill. Laborer's Dist. Council v. S.J. Groves & Sons Co.*, 842 F.2d 164, 167 (7th Cir. 1988); *Ben Sager Chems. Int'l*, 560 F.2d at 809.

Given the Court's credibility determinations based on Newgard and Maghakian's depositions, *see supra* Section 3, Defendants do not make it past the first prong of the test—"good cause" for the default—which is fatal to their argument based in Rule 60(b)(1). *Pretzel & Stouffer*, 28 F.3d at 45, 46 (defendants must meet all three prongs of the test to support vacating a judgment). The Court finds Defendants' assertions that they "at no point . . . intend[ed] to avoid the current litigation" and "did not even become aware of this case until February 13, 2024" to be without merit. ECF No. 17 at 7. The Court earlier determined that Maghakian's testimony was more

credible than Newgard's and therefore adopted her testimony that Newgard lied about his identity while Maghakian was attempting to serve him. The Court also credits Maghakian's testimony that, if Newgard had been honest about who he was, both Newgard and Advanced Wholesale would have been properly served. *See supra* Section 3. The Court further credited Plaintiffs' assertions that Newgard spoke with Graves about this case in December 2023, meaning that he had actual notice of its existence at that time. *See id.*

Accordingly, Defendants may not argue "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1) because they—Newgard personally and Advanced Wholesale via Newgard, its representative—willfully evaded service, contributing to the default. *Arnold v. Boatman's Nat. Bank of Belleville*, 89 F.3d 838, 1996 WL 359778 (Table), at *1 (7th Cir. 1996) ("A review of such cases shows that relief under the excusable neglect standard may be granted only 'where the actions leading to the default were not willful, careless, or negligent.'" (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1117 (7th Cir. 1994) (cleaned up))); *see also Iconic Energy LLC v. Solar Permit Servs., Inc.*, 18 CV 50020, 2018 WL 4520220, at *3 (N.D. Ill. Aug. 3, 2018), *report and recommendation adopted,* No. 18 CV 50020, 2018 WL 5290099 (N.D. Ill. Aug. 20, 2018) ("[I]n the *absence of a showing of wilfulness* [sic], courts in the Seventh Circuit are more likely than not . . . to vacate a default judgment." (quoting *Christensen v. Adams,* 251 F.R.D. 358, 360 (S.D. Ill. 2008) (emphasis added)).

Because failure on even one prong is fatal, and, independently, because the Court has found that it must vacate the default judgment due to lack of personal jurisdiction, it declines to analyze prongs (2) and (3) of the test. *Pretzel & Stouffer*, 28 F.3d at 45. It further declines to analyze

Defendants' argument that, even if Defendants provided no good "excuse" for the default, good cause still exists because of the allegedly disproportionate damages award. *See* ECF No. 17 at 9–10.

**5.    ATTORNEYS' FEES**

Defendants have very narrowly escaped default judgment in this case. The Court will not allow Newgard's willful evasion of process and disregard for these proceedings to go without penalty. The Court was constrained to grant Defendants' motion to vacate, but it is not without recourse to sanction Defendants for their evasive and dilatory behavior, which required both Plaintiffs and the Court to expend valuable resources.

In their motion to vacate, Defendants argue that Plaintiffs "will not be harmed or prejudiced in any way if [they are] forced to litigate now." ECF No. 17 at 10. That argument conveniently forgets that Plaintiffs have expended resources in requesting entry of default, moving for default judgment and other relief, responding to Defendants' motion to vacate default judgment, and deposing Newgard and Maghakian. *See Iconic Energy*, 2018 WL 4520220, at *3 (noting that defendant's conduct caused actual prejudice to plaintiff by way of motion practice and noting that "[t]he Seventh Circuit has recognized that even where the drastic sanction of . . . default is not warranted, an award of sanctions such as attorneys' fees may be" (citing *C.K.S. Eng'rs, Inc.*, 726 F.2d at 1206)). Had Newgard been honest about his identity when Maghakian asked him on December 27, 2023, or had he acted upon his actual notice of these proceedings and appeared earlier, all these steps could have been avoided. Accordingly, the Court will make setting aside the default judgment and permanent injunction contingent on Defendants paying Plaintiffs' reasonable attorneys' fees and costs incurred in seeking entry of default; moving for default judgment,

damages, and injunctive relief; opposing the motion to vacate; and deposing Newgard and Maghakian. *E.g., id.* By **thirty (30) days from this Order**, Plaintiffs' counsel shall file a statement of the reasonable fees and costs incurred, supported by affidavits and exhibits as necessary.

6. **CONCLUSION**

For all the reasons set forth herein, the Court grants Defendants' motion to vacate the April 12, 2024 default judgment and permanent injunction, ECF No. 16, contingent upon their payment of Plaintiffs' reasonable attorneys' fees incurred in requesting entry of default; moving for default judgment, damages, and injunctive relief; responding to Defendants' motion to vacate; and deposing Newgard and Maghakian. Plaintiffs' counsel is ordered to file a statement of reasonable attorneys' fees corresponding to the same, accompanied by sufficient evidentiary support and justification, within **thirty (30) days of this Order.** Plaintiffs are granted additional time to properly serve Defendants and shall do so within **sixty (60) days of the judgment in this case being vacated**.

Accordingly,

**IT IS ORDERED** that Defendants Advanced Wholesale LLC and Nikolas Newgard's motion to vacate the April 12, 2024 default judgment and permanent injunction, ECF No. 16, be and the same is hereby **GRANTED**, contingent upon their payment of Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves' reasonable attorneys' fees as specified herein;

**IT IS FURTHER ORDERED** that Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves' counsel shall, within **thirty (30) days of this Order, FILE** a statement of reasonable attorneys' fees as discussed herein; and

**IT IS FURTHER ORDERED** that the deadline for Plaintiffs The Goat LLC, Daniel Webster, and Gary Graves to serve Defendants Advanced Wholesale LLC and Nikolas Newgard be and the same is hereby **RESET** to **sixty (60) days from the date the judgment is vacated**.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2025.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge